# UNITED STATES DISTRICT COURT
## Eastern District of Michigan

UNITED STATES OF AMERICA
V.
Deaunte Patrick
*Defendant*

**ORDER OF DETENTION PENDING TRIAL**
Case Number: 10-30202

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

## Part I—Findings of Fact

- ☐ (1) The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been convicted of a ☐ federal offense ☐ state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed - that is
  - ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4).
  - ☐ an offense for which the maximum sentence is life imprisonment or death.
  - ☐ an offense for which a maximum term of imprisonment of ten years or more is prescribed in _____*
  - ☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), or comparable state or local offenses.
- ☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.
- ☐ (3) A period of not more than five years has elapsed since the ☐ date of conviction ☐ release of the defendant from imprisonment for the offense described in finding (1).
- ☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

### Alternative Findings (A)

- ☐ (1) There is probable cause to believe that the defendant has committed an offense
  - ☐ for which a maximum term of imprisonment of ten years or more is prescribed in _____.
  - ☐ under 18 U.S.C. § 924(c).
- ☐ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings (B)

- ☑ (1) There is a serious risk that the defendant will not appear.
- ☑ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

## Part II—Written Statement of Reasons for Detention

I find that the credible testimony and information submitted at the hearing establishes by ☑ clear and convincing evidence ☐ a preponderance of the evidence that

SEE ATTACHMENT

## Part III—Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

| June 3, 2010 | s/ Mona K. Majzoub |
|---|---|
| Date | *Signature of Judge* |
| | MONA K. MAJZOUB - UNITED STATES MAGISTRATE JUDGE |
| | *Name and Title of Judge* |

*Insert as applicable: (a) Controlled Substances Act (21 U.S.C. § 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

The alleged facts are as follows: Anthony Eugene Pope, an alleged drug dealer who sells cocaine, crack cocaine, heroine and "pills" expressed an interest in arranging armed robberies to a CI (known to the ATF to be reliable) by means of home invasions of "drug houses". Pope asked the CI if he knew of any potential drug houses that might be the target of such a robbery. Pope responded that he would have one of "his guys" contact the CI about carrying out such a robbery. On February 19, 2010 the CI was contacted by Defendant Martin, who identified himself as an associate of Pope who requested information about locations from which he and others could rob large quantities of narcotics. Defendant Martin again contacted the CI in March 2010, asking to meet the CI's source of information about which drug houses to rob. Defendant Martin was then introduced to an Undercover ATF agent on March 12, 2010 at a predetermined location in Detroit to discuss armed home invasions for narcotics. Defendant Martin told the Undercover ATF agent that he was employed as a runner for a drug dealer who obtained 15 - 20 bricks of cocaine at a time and that he knew where the cocaine was stored and when it arrived. Martin was unhappy with his employer because he felt that he deserved more compensation than he was being provided, but that he had participated in other robberies and had a robbery crew who would be readily available to assist him. Defendant stated that he needed to know all the details and how many guys would be inside the house so that he could be prepared to go in shooting, if necessary. Defendant Martin said that he would have his guys ready when the load came in and was told by the ATF agent that it would be at the beginning of the month.

On March 23, Pope stated to the CI that he wanted 2 kilograms of cocaine for himself out of the robbery because he was the one who facilitated it, although he would not physically participate in the robbery.

On March 23, 2010 the CI went to a pre-determined meet location in Detroit to meet with Defendant Martin and one of the other recruited participants, Orvis Winans. Martin had explained to Winans how the deal was to go down: there would be 20 kilograms of cocaine, another Martin associate would also be there, that they would make it look like a home invasion. Winans explained that he "does this for a living" and knows what he is doing. Winans directed the CI to make sure the front door was open so they wouldn't have to kick it in and give the guard time to defend. Winans speculated that it could turn into a blood bath if things didn't go smoothly, but that he was prepared to go forward. Winans would focus on the guy guarding the drugs inside the house and shoot him if necessary, and Martin would focus on the "next guy". Martin expected to that each of the participants would get five kilograms of cocaine from the deal, and Pope would get one kilo.

On April 6, 2010 a second ATF Undercover Agent bought 23.76 grams of cocaine from Pope, and on April 15, 2010 Pope, accompanied by the Defendant Martin arrived at a predetermined location where Pope sold the same ATF Undercover Agent 12.9 grams of crack cocaine (both sales tested positive for cocaine).

On May 25, 2010 the CI placed a recorded telephone call to Martin advising that the shipment of cocaine would be delivered in two days. On May 27 the CI received a recorded telephone call from Martin who advised that they were planning on not letting anyone live during the armed

home invasion because he (Martin) did not want to go back to prison, and he knew that he was risking spending the rest of his life in prison by going forward, so he wanted the job to be "air tight".

On May 27, 2010 the CI went to a predetermined location to meet with Defendant Martin and his co-conspirators Welch, Patrick and Davis where they awaited a call to advise of the location of the targeted narcotics residence. While waiting Defendants Patrick and Davis both went into a convenience store and bought a black t-shirt and a pair of gloves. The CI instructed Defendants Martin, Welch, Patrick and Davis to follow him in their car to a secondary meet location, which they started to do, but then suddenly drove away. Defendants Martin, Welch, Patrick and Davis were immediately pulled over for a traffic stop and taken into custody. An inventory of the vehicle produced three black hooded sweatshirts, a stocking hat, a black t-shirt, a pair of gloves, and a Ruger .45 caliber semi-automatic pistol. This is a presumption case as to all three defendants.

### Deaunte Lorenzo Patrick

This is a presumption case and Defendant Patrick is facing a 15 year mandatory minimum sentence. Defendant is a 22 year old single male who has been living with his aunt for the past two years. His employment history consists of being employed for one week at the Four Seasons Nursing Home in Westland, Michigan, in June 2008. He has had no prior or subsequent employment, and is supported entirely by his mother. His only asset is a 1988 Caprice for which he has a $600 liability for fines.

Defendant's criminal history includes six outstanding warrants. He has a conviction for felony weapons and on 11/18/08 he was sentenced to two years on HYTA. However on 12/21/09 Defendant Patrick's HYTA was revoked. On 2/18/10 the defendant pled guilty to Attempt Felony Weapons, Carrying Concealed and he was sentenced to two years probation. The Defendant's HYTA was revoked, presumably because of the new felony charge. Defendant Patrick was (and currently is) on probation when these charges were filed, but contact with his probation officer has not been successful as of yet.

Defendant's role in the alleged conspiracy is that he volunteered to be part of the "team" which conspired to participate in the armed home invasion to steal drugs from a drug house. On May 27, 2010 Defendants Patrick and Davis went to the meet place to further plan the home invasion. Patrick told the CI that he was fine with the terms of the split of the cocaine. It was Patrick (possibly along with Davis) who purchased the stocking hat, the hooded sweatshirts, the gloves and the other paraphernalia from the convenience store to carry out the armed invasion. Defendant Patrick, while on probation, engaged himself in a conspiracy and agreed to commit an unlawful act of violence. Defendant presents a flight risk, due to the fact that he has six currently outstanding warrants for failures to appear in court. The seriousness of the alleged offense, Defendant Patrick's probation status, and his continued criminal history while under supervision, combined with the fact that there was nothing sufficient to rebut the presumption of Detention

presented to the Court, all cause the Court to conclude that Defendant Patrick presents a danger to the community. There are no conditions of bond which would assure his appearance in court or assure the safety of the community. Detention is Ordered.